IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL
DIVISION

| | |
|---|---|
| LORI A. MATTINGLY-STAR,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration[1],<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>Case No. 2:12-cv-311-BCW<br><br>Magistrate Judge Brooke Wells |

All parties in this case have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[2]

Plaintiff Lori A. Mattingly-Star ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Social Security disability and disability insurance benefits. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order AFFIRMING the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of the Social Security Administration. Accordingly, she has been automatically substituted for Michael J. Astrue as the defendant in this action. See 42 U.S.C. §405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); F.R.C.P. 25(d)("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

[2] See 28 U.S.C. § 636(c); F.R.C.P. 73, docket no. 18.

## BACKGROUND

Plaintiff, Ms. Mattingly-Star, who was born on July 15, 1976[3], filed for Disability

Insurance Benefits on March 10, 2009, alleging disability beginning June 30, 2005.[4]  Plaintiff

contends she is disabled due to a combination of mental and physical impairments, including

fragile X syndrome[5], sleep apnea, learning disorder, obesity and depression.[6]  Plaintiff's claim

was initially denied on June 11, 2009, and upon reconsideration on October 23, 2009.[7]  A

hearing before an Administrative Law Judge ("ALJ") was held on April 1, 2011.[8]  On June 9,

2011, the ALJ issued a written decision denying Plaintiff's claim for benefits.[9]  Plaintiff then

appealed the denial to the Social Security Appeals Council which denied a review of the ALJ's

decision on March 2, 2012.[10]  Because the Appeals Council denied review, the ALJ's decision is

the Commissioner's final decision for purposes of this appeal pursuant to 42 U.S.C. §405(g).[11]

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation

process[12] that Plaintiff had not engaged in substantial gainful activity since February 28, 2009,

the amended onset date.[13]  At Step Two, the ALJ found that the Plaintiff's severe impairments

---

[3] Administrative Record, docket no.  9 [hereinafter referred to as "Tr."] at 28, 248.

[4] Tr. at 18.   The alleged onset date was later amended to February 28, 2009.  See Tr. at 20.

[5] "Fragile X syndrome is a genetic condition that causes a range of developmental problems including learning disabilities and cognitive impairment."  FRAGILE X SYNDROME,  http:// http://ghr.nlm.nih.gov/condition/fragile-x-syndrome (Reviewed April 2012).

[6] Opening Brief, docket no. 14 [hereinafter referred to as "Opening Br."] at p. 3-4.

[7] Tr. at 82, 84.

[8] Tr. at 18.

[9] Tr. 18-30.

[10] Tr. at 1.

[11] See Doyal v. Barnhart, 331 F. 758, 759 (10th Cir. 2003).

[12] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation process for determining if a claimant is disabled).

[13] Tr. at 20.

were "fragile X syndrome; morbid obesity; learning disorder, NOS (20 CFR 404.1520(c))."[14]  At

Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments contained within the

regulations.[15]

In making this determination that Plaintiff's impairments did not meet a listing, the ALJ

gave "specific consideration to listing 12.05," but found that Plaintiff's impairments did not meet

this listing.  The ALJ found that Plaintiff did not meet the requirements of the capsule definition

found in paragraph A of listing 12.05 because "...there is no evidence that the claimant is

dependent upon others for her personal needs.  The claimant is married, lives with her husband,

and reported that she is "completely independent" in caring for her personal needs."[16] The ALJ

then found Plaintiff's IQ scores are not low enough to meet the severity prongs of the listing.[17]

The ALJ then further found that claimant's IQ scores in conjunction with the her morbid obesity

and other symptoms associated with fragile X syndrome do not support a finding that Plaintiff's

adaptive functioning is impaired to the level alleged by Plaintiff.[18]

Next, the ALJ evaluated whether the Plaintiff met the "paragraph B criteria (which is

included under paragraph D in listing 12.05)."[19]  Here, the ALJ evaluated the Plaintiff's daily

living activities, social functioning, concentration, persistence and pace, and episodes of

decompensation.[20]  The ALJ then stated that "the following residual functional capacity

---

[14] Id.

[15] Id.

[16] Tr. at 21.

[17] Id.

[18] Id.

[19] Id.

[20] Tr. at 21-22.

assessment reflects the degree of limitation the undersigned has found in the "paragraph B"

mental function analysis."[21]   The ALJ found Plaintiff had a residual functional capacity ("RFC")

> to perform a range of light work, including the ability to lift no more than 20 pounds
> occasionally, and 10 pounds frequently and perform work activities with the following
> additional limitations:
> - Can sit for about 6 hours in an 8 hour day, and walk and stand for about 2 hours in an 8 hour day;
> - No climbing ladders, ropes, or scaffolds;
> - No more than occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling;
> - Must avoid concentrated exposure to unprotected heights and hazards;
> - Can perform only simple, routine work, and is able to understand, remember, and carry out instructions consistent with such work;
> - Can use judgment and make work-related decisions consistent with those found in simple, routine work;
> - Only occasional job related contact with the public, secondary to issues with cleanliness and hygiene;
> - Must have stable work with few changes in routine; and,
> - No travel as part of job duties.[22]

As to the medical opinions rendered in making the RFC determination, the ALJ did not

give any opinion "controlling weight."  However, the ALJ did give "great weight" to the

opinions of Dr. Tim Kocker, Ph.D who saw the Plaintiff for a neuropsychological evaluation on

March 20, 2009[23] and the State Agency physicians whose opinions the ALJ noted were

"consistent with the medical evidence, and they are familiar with the Agency's standards for

disability."[24]  As to the other medical opinions contained in the record, the ALJ gave little weight

to Dr. Ellen Arch's opinion.[25]  Dr. Arch saw Plaintiff one time for a consultation for fragile X

---

[21] Tr. at 22.

[22] Tr. at 22-23.

[23] Tr. at 26.

[24] Tr. at 27.

[25] Id.

syndrome and obesity.[26]  Dr. Arch opined that Plaintiff would have issues all of her life

secondary to her genetic abnormality and Plaintiff meets the criteria for disability.[27]  Specifically,

as to this opinion, the ALJ found

> Dr. Arch's opinion is supported by her subjective discussion with the claimant
> and her mother, and is not based upon any clinical examination of the claimant.
> Her opinion appears to be further based off of her experience in dealing generally
> with individuals who have fragile X syndrome and not on claimant's personal
> limitations.  Therefore, while her statements regarding obesity, borderline
> intelligence, motivational issues, and decision making deficits being common in
> individuals with fragile X syndrome are useful in corroborating the claimant's
> symptoms, they are of little worth in determining the claimant's actual functional
> capacity.  Because Dr. Arch's consulting opinion is not based off of any objective
> medical findings pertaining specifically to the claimant, her opinion is given little
> weight.[28]

The ALJ also gave no weight to the opinion of Dr. Richard Olcese, Ph.D who evaluated

Plaintiff in 1997.[29]  The ALJ reasoned that because this evaluation was performed 12 years prior

to the amended onset date, "it has very little relevance to [Plaintiff's] ability to perform work

activities during the relevant period…"[30]

Lastly, as to "other opinions from lay witnesses" the ALJ noted that he gave

"consideration to all of the statements in the record, including those made by claimant's

mother."[31]  The ALJ noted that Plaintiff's mother consistently stated Plaintiff's impairments to

be more limited than Plaintiff herself has acknowledged.[32]  The ALJ then gave Plaintiff's

---

[26] Tr. at 26.

[27] Tr. at  380.

[28] Tr. at 26-27.

[29] Tr. at 27.

[30] Id.

[31] Id.

[32] Id.

mother's statement little weight citing the mother's lack of medical expertise and inherent bias towards her daughter.[33]

At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work as a food management aide, fast food worker, teacher's aide or plastic molding machine operator.[34] However, at Step Five, the ALJ after considering Plaintiff's age, education, work experience, and residual functional capacity found that there are jobs in significant numbers in the national economy that Plaintiff could perform.[35]  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.[36]

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether his findings are supported by "substantial evidence" and whether the correct legal standards were applied.[37] If supported by substantial evidence, the findings are conclusive and must be affirmed.[38] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39]  Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being

---

[33] Id.

[34] Tr. at 28.

[35] Id.

[36] Id. 29-30.

[37] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).

[38] Richardson v. Perales, 402 U.S. 389, 401 (1981).

[39] Clifton v. Chater, 79 F.3d 1007, 1007 (10th Cir. 1996).

supported by substantial evidence."[40]  Moreover, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."[41]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[42]  In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[43]  However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[44]  Further, the Court "may no 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo."[45]  Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[46]

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and arguments.  The Court deems oral argument to be unnecessary, and finds as follows:

## <u>ANALYSIS</u>

In her appeal, Plaintiff raises three arguments:  (1) did the ALJ err in failing to properly evaluate whether Plaintiff meets or equals Listing 12.05(c); (2) did the ALJ err by failing to properly evaluate the opinion of Dr. Ellen Arch, a genetic specialist; (3) did the ALJ err by

---

[40] <u>Zolanski v. FAA</u>, 372 F.3d 1195, 1200 (10th Cir. 2000).

[41] <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009).

[42] <u>Id</u>.

[43] <u>Shepherd v. Apfel</u>, 184 F.3d 1196, 1199 (10th Cir. 1999).

[44] <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

[45] <u>Lax</u>, 489 F.3d at 1084 (quoting <u>Zoltanski</u>, 372 F.3d at 1200).

[46] <u>Jensen v. Barnhart</u>, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

failing to properly consider the lay witness testimony of Plaintiff's mother[47]  The Court will discuss each of the Plaintiff's arguments in turn.

### A.  **Listing 12.05(c)**

"At step three [of the requisite sequential analysis], the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation."[48]  In this case, in making a determination that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526, the ALJ focused particularly on listing 12.05.[49]  However, the ALJ found that Plaintiff's "impairments do not meet or medically equal that listing."[50]

On appeal, Plaintiff challenges the ALJ's finding as to Listing 12.05(c), and argues that the ALJ failed to properly evaluate the evidence in the record that demonstrated that Plaintiff met the requirements of this listing.  Specifically, Plaintiff's arguments focus on the ALJ's evaluation of evidence of Plaintiff's functioning between ages 29 through 32, not evidence that demonstrates her deficits prior to age 22.  Plaintiff asserts that evidence was presented that demonstrates that Plaintiff had been involved in special education throughout her school years and had difficulty relating to others and the ALJ erroneously did not address this evidence in his discussion of the introductory paragraph of Listing 12.05.

"In order to satisfy Listing 12.05, a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the

---

[47] Opening Br. 5-7.

[48] Wall, 561 F.3d at 1052 (internal quotation marks omitted).  See also 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

[49] Tr. 20-21.

[50] Tr. 21.

regulations."[51]  "The capsule definition for listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.'"[52]  Severity prong (c) of Listing 12.05, requires a showing of:  "a valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function."[53]

In addition, with respect to Listing 12.05(c), the Social Security Administration's Program Operations Manual System ("POMS") provides:

> [S]lightly higher IQ's (e.g. 70-75) in the presence of slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination.  It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.[54]

The POMS evaluation tool is used only when "the capsule definition of that impairment is satisfied."[55]

In the instant case, the Plaintiff argues in addition to not evaluating the evidence presented of Plaintiff's impairments before age 22, the ALJ also erred by not specifically mentioning the POMS in his evaluation.  Plaintiff relies on Crane v. Astrue,[56] to support her arguments with regard to the POMS.  However, in Crane, in evaluating whether the Plaintiff in

---

[51] Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009)(internal quotation marks and alterations omitted).

[52] Id. (quoting 20 C.F.R. Part 404, Subpt. P., App. 1 § 12.05).

[53] Wall, at 1062 (internal quotation marks omitted).

[54] Crane v. Astrue, No. 09-3137, 369 Fed. App'x 915,  921 (10th Cir., Mar. 17, 2010)(unpublished)(citing POMS No. DI 24515.056(D)(1)(c)).

[55] Id. DI 24515.056(B)(1).

[56] Id.

that case met the capsule definition, the 10th Circuit found that there was no evidence Ms. Crane

met the capsule definition because her lawyer never mentioned mental retardation and instead

focused on her anxiety and panic attacks.[57]   Further, and most importantly, the Court found

**"given that Ms. Crane had a GED and a steady work history, which included jobs at semi-**

**skilled and skilled levels, the ALJ understandably did not discuss this Listing**,"[58]

Here, with regard to Ms. Mattingly-Star, the ALJ noted in his decision that Plaintiff

argued that she met the 12.05 listing because although she had a low full-scale IQ score of 72,

which is higher than what is required by severity prong (c), Plaintiff is also morbidly obese and

has other symptoms associated with her fragile X syndrome which caused other additional

limitations.[59]   The ALJ made the following findings on the severity prong (c):

> …there is no objective medical evidence that supports deficits in adaptive
> functioning to the degree alleged by the claimant.   The claimant performed
> substantial gainful activity for a period ending in February 2009, and had a history
> of performing part time work below substantial gainful activity levels for many
> years prior to that.   Furthermore, there is no objective evidence that she could not
> continue[] (sic) to perform at that same level.   Her ability to live independently
> with her husband, perform a wide range of daily activities, and her consistent
> work history (both above and below substantial gainful activity limits) does not
> show deficits in adaptive functioning at the severity required to establish a
> diagnosis of mental retardation.   Therefore, as the claimant's history of daily
> activities, social functioning, and work history support adaptive functioning above
> the levels required to establish mental retardation, the undersigned finds that her
> impairments do not medically equal listing 12.05.[60]

Upon review, the Court finds that the ALJ did not err with respect to Listing 12.05(c).

First, as in <u>Crane</u>, it was proper for the ALJ to consider evidence *after* Plaintiff reached 22 to

demonstrate any deficits in adaptive functioning.   Also, like in <u>Crane</u>, the ALJ evaluated prior

---

[57] <u>Crane</u> at 921.

[58] <u>Id</u>.

[59] Tr. at 21.

[60] Tr. at 21.

work history and concluded that Plaintiff did not meet the adaptive functioning deficits

contemplated by Listing 12.05(c).  In addition, although the ALJ did not specifically mention the

POMS, the Court finds the evidence demonstrates that the ALJ considered the POMS.  The

ALJ's notation of Plaintiff's IQ score and arguments related to her weight and fragile X

syndrome, demonstrated that the ALJ was looking beyond just the Plaintiff's IQ score in his

evaluation.   Lastly, upon review of the record, the Court finds that the substantial evidence

supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05(c).

## B.  Dr. Ellen Arch's Opinion

Generally, "treating source opinions should be given more weight than the views of

consulting physicians or those who only review the medical record and never examine the

claimant."[61]  As the 10th Circuit has recognized:

> [t]he treating physician's opinion is given particular weight because of his unique
> perspective to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.  The opinion of an examining
> physician is generally entitled to less weight than that of a treating physician, and
> the opinion of an agency physician who has never seen the claimant is entitled to
> the least weight of all.[62]

Moreover, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion,

provided that opinion 'is well-supported…and is not inconsistent with other substantial

evidence.'"[63]  Further,

> [e]ven if a treating physician's opinion is not entitled to controlling weight,
> treating source medical opinions are still entitled to deference and must be
> weighed using all of the factors provided in [20 C.F.R. § 404.1527]. Those factors
> are: (1) the length of treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment

---

[61] Daniell v. Astrue, 384 Fed App'x 798, 803 (10th Cir. 2010)(citing Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

[62] Id. at 803-804 (citing Robinson at 1084).

[63] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).

provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons…for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.[64]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[65]

Here, Dr. Arch, a genetic specialist, reviewed the Plaintiff's results on fragile X methylation studies which showed Plaintiff had the full genetic mutation for fragile X syndrome.[66]  Dr. Arch also discussed Plaintiff's symptoms with her and her mother at length.[67]  Dr. Arch's notes also indicate that a physical exam was deferred due to length of time for discussion but Dr. Arch noted that patient has a long thin face consistent with fragile X syndrome, "but is generally nondysmorphic."[68]  Dr. Arch then opined that based upon Plaintiff's "fairly classic" case of female fragile X syndrome and the symptoms and difficulties usually associated with the disorder, Plaintiff "…is going to have these issues all of her life and they are secondary to her genetic abnormality.  It seems she fulfills the criteria for disability."[69]

---

[64] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p (emphasis added).

[65] See e.g., Ruthledge v. Apfel, 230 F.3d. 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[66] Tr. at 378.

[67] Tr. at 378-380.

[68] Tr. at 378.

[69] Tr. at 380.

The ALJ rejected Dr. Arch's opinion because it was supported by Dr. Arch's subjective discussion with Plaintiff and her mother and not based upon any clinical examination.  Further, according to the ALJ, Dr. Arch's opinion "appears to be further based off of her experience in dealing generally with individuals who have fragile X syndrome and not on the claimant's personal limitations."[70]  The Court finds the ALJ's reasons for rejecting Dr. Arch's opinion to be based upon substantial evidence and free from legal error.  Because the ALJ did not reject the opinion completely but rather gave it "little weight," the ALJ was required to "give good reasons…for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."[71]  The Court finds the ALJ did just that  his assessment of Dr. Arch's opinion.   Upon review of Dr. Arch's notes from her consultation with Plaintiff, the ALJ's reasons for the weight accorded to Dr. Arch's opinion are "good" and are based upon substantial evidence.[72]  A contrary finding would essentially asking this Court to reweigh the evidence, "an invitation we must decline."[73]

### C. Lay Witness Testimony

Social Security Ruling 06-03-p provides in relevant part:

> "[i]n considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."[74]

---

[70] Tr. at 26.

[71] See e.g., Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[72] See Langley at 1119.

[73] Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  See also Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007)("We review only the *sufficiency* of the evidence, not its weight[.]").

[74] SSR 06-03p, 2006 WL 2329939 at  *6.  (August 9, 2006).

Further, the 10th Circuit has provided that the ALJ is "not required to make specific written findings of credibility, only if 'the written decision reflects that the ALJ considered the testimony.'"[75]

Here, in giving the statement of Plaintiff's mother "little weight," the ALJ noted that "the claimant's mother has consistently stated that the claimant's impairments are more limiting tha[n] the claimant herself has acknowledged." For support, the ALJ cites to Exhibit 3F, at 4 which is the evaluation report authored by Tim Kockler, Ph.D in which specific examples of the differences in the Plaintiff and her mother's opinion of Plaintiff's capabilities are noted.[76] The ALJ further reasoned that Plaintiff's mother "does not appear to have any medical expertise and her opinion is inherently biased toward her daughter."[77]

The Plaintiff argues that remand is necessary because the ALJ improperly opined that Plaintiff's mother's opinion is biased towards her daughter. However, the Court finds the ALJ's reasoning in affording "little weight" to the opinion of Plaintiff's mother to be in line with what is required in SSR 06-03p because evidence of "bias" is not all the ALJ relied upon. Specifically, the ALJ pointed to a specific place in the record where the Plaintiff and her mother's views on Plaintiff's capabilities clashed and also examined whether Plaintiff's mother is a "medical source." Therefore, the Court finds that the ALJ's examination of the Plaintiff's mother's opinion is supported by what is required in the regulations and free from legal error.

## CONCLUSION AND ORDER

For the foregoing reasons, The ALJ did not err in concluding that Ms. Mattingly-Star was not disabled. His conclusion is supported by substantial evidence in the record and the correct

---

[75] Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006).

[76] Tr. at 324.

[77] Tr. at 27.

legal standards were applied.  Therefore, the Court finds that the Plaintiff's arguments regarding the ALJ's findings as to listing 12.05, rejection of the her treating physician's statement and a statement of her mother are without merit and do not warrant a remand in this case.  Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

DATED this 19 September 2013.

Brooke C. Wells
United States Magistrate Judge